UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
RICHARD MICHEL,

          Petitioner,

                             MEMORANDUM AND ORDER
      -against-               18-CR-0664(JS)

UNITED STATES OF AMERICA,

          Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Richard Michel, <u>Pro se</u>
                  #90422-053
                  USP Victorville
                  U.S. PENITENTIARY
                  P.O. Box 3900
                  Adelanto, California  92301

For Respondent :    Michael R. Maffei, Esq.
                  United States Attorney's Office
                  Eastern District of New York
                  610 Federal Plaza
                  Central Islip, New York  11722

SEYBERT, District Judge:

Presently before the Court is the <u>pro se</u> Section 2255 habeas petition of Richard Michel ("Petitioner" or "Michel"), seeking to vacate, set aside, or correct his sentence (hereafter, the "Petition").  (<u>See</u> Petition, ECF No. 167.)  The Government opposes the Petition.[1]  (<u>See</u> Opp'n, ECF No. 170.)  For the following reasons, the Petition is DENIED in its entirety.

---

[1]  Although given the opportunity to do so, Petitioner did not file a reply.  (<u>See</u> Jan. 13, 2026 Elec. ORDER (providing a March 13, 2026 deadline for Petitioner to reply, and placing Petitioner "**ON NOTICE**" that "[i]f a timely reply is not received, the Court will

BACKGROUND

I.   The Underlying Crimes[2]

Petitioner Michel is the leader of the Red Lane Gorillas (hereafter, the "Gorilla Lanes"), a subset of the Lanes, which is a fraction of the violent Bloods street gang.  (See PSR ¶¶ 7-8, 10.)  The Bloods, including its Gorilla Lanes subset, were involved in a years' long gang rivalry with the Crips, another violent street gang.  (See id. at ¶¶ 7, 10.)  At the same time, an internal rivalry existed between different fractions of the Bloods, i.e., between the Gorilla Lanes and members of the Bloods 5-9 Brims fraction.  (See id. at ¶10.)  Petitioner actively participated in both rivalries.  Additionally, Petitioner was involved in a power struggle with other leadership of the Lanes.  (See id.)  Actions taken during the courses of the rivalries and in-fighting where the bases for the charges brought against Petitioner; those actions are generally described hereafter.  Further, other violent,

_____

deem the record fully expanded and will proceed to rule upon the Petition")); cf. Case Docket, in toto.)  The Court further notes it directed its January 13 Electronic Order, and a related, January 15, 2026 Electronic Supplemental Order, together with the Affidavit of Counsel, be resent to Petitioner at his most recent address, which Orders and Affidavit were not returned.  (See Feb. 5, 2026 ORDER; see also Case Docket, in toto.)

[2]  Unless otherwise noted, the facts are drawn from Superseding Indictments (see ECF Nos. 41 & 48) and the Presentence Investigation Report ("PSR") (see ECF No. 128 (sealed)).

2

illegal activities in which Petitioner participated are also outlined.

A.    Regarding the Inter-Gang Rivalry with the Crips

Beginning in 2010, tensions between the Bloods and Crips intensified. (See PSR ¶ 13.) For example, in November 2010, after a verbal altercation with a Crips associate, Petitioner's co-defendant, Dylan Cruz, opened fire on the associate, hitting him in the chest and paralyzing him. (See id. at ¶ 16.) The next month, Gorilla Lanes member James McClenic ("McClenic") was shot and killed by a Crips member. (See id. at ¶ 17.) Said murder was retaliation for "disrespecting the Crips on social media." Smith v. United States, Nos. 14-CR-0264 & 15-CR-0428, 2026 WL 73971, at *3 (E.D.N.Y. Jan. 9, 2026). McClenic's murder also flamed the fires of the gang rivalry, with McClenic's mother seeking Petitioner's assistance to avenge her son's death. (See PSR ¶¶ 17-18.) Petitioner did so; among other things, in reprisal, Petitioner: with others, set afire the vehicles of family members of Crips leader Raphael Osborne; and, participated in the attempted murder of Michael Petit-Frare, who the Gorilla Lanes suspected was involved in McClenic's murder. (See id. at ¶¶ 18-19.) Petit-Frare was not killed, but was blinded. (See id. at ¶ 19.)

B.    Regarding the Intra-Fraction Rivalry with the 5-9 Brims

In October 2011, in the throes of trying to consolidate the Gorilla Lanes' power in Hempstead, New York, Petitioner and

3

fellow gang members abducted a 5-9 Brims gang member, Jamel Glasco, who had been resisting Petitioner's recruitment efforts, together with Glasco's cousin.  (See PSR ¶ 20.)  Thereafter, Glasco and his cousin were beaten by Petitioner and Petitioner's Gorilla Lanes cohorts.  (See id.)

C.    Regarding the Gorilla Lanes Leadership Power Struggle

In the summer of 2016, Petitioner was planning to take over leadership of the Lanes and to do so, conspired to murder and assault other high ranking, Bronx-based Lanes leaders.  (See PSR ¶¶ 28-29; see also Opp'n at 4-5.)  However, Petitioner learned that Lanes gang member Kevin Gregg ("Gregg") was not going to support Petitioner's attempted take-over.  (See id. at ¶ 30.)  Because of this perceived disloyalty, Petitioner hatched a plan to assault and murder Gregg; as part of the plan, under false pretenses, Gregg was lured to a remote area of Uniondale, New York.  There, Petitioner shot Gregg in the back of the neck and left him for dead.  (See id.)  However, Gregg survived.  (See id.)

D.    Other Violent Activities

Regarding McClenic's murder, Petitioner and others came to believe that McClenic's friend, Anthony Richard ("Richard"), had set up McClenic and aided the Crips in McClenic's murder.  (See PSR ¶ 21.)  As a result, in mid-July 2012, when the opportunity arose to take revenge against Richard, Petitioner participated in a multi-vehicle pursuit to trap Richard.  (See id. at ¶¶ 22-23.)

4

Once trapped, Petitioner's co-defendant, Cruz, used Petitioner's firearm to gun down and kill Richard; Cruz also shot Richard's passenger, who survived.  (See id. at ¶ 23.)

## II.  The Earlier and Instant Case

### A.  The Indictments

On September 14, 2017, in an earlier case, an indictment was returned charging Petitioner with, inter alia, conspiracy to murder rival gang members in-aid-of racketeering, and the 2016 assault and attempted murder of Gregg in-aid-of racketeering (hereafter, the "Earlier Case").  See United States v. Michel, Case No. 17-CR-0509, Indictment (ECF No. 1) (E.D.N.Y. Sept. 14, 2017).  However, on January 28, 2020, while the indictment in the Earlier Case was pending against Petitioner, a federal grand jury returned another indictment against Petitioner (and others), which superseded and incorporated all charges brought against Petitioner in the Earlier Case.  (See Instant Case, Initial Superseding Indictment, ECF No. 41.)  Then, on March 11, 2020, a subsequent, 14-count, superseding indictment entered, with additional charges being brought against Petition, including, inter alia, racketeering, racketeering conspiracy, and the murder in-aid-of-

racketeering of Richard.[3]  (See Subject Superseding Indictment, ECF No. 48.)

> B.    The Plea Agreement and Change-of-Plea Hearing

Following extensive negotiations, on December 15, 2021 and in the Instant Case, Petitioner entered into a plea agreement with the Government (hereafter, the "Agreement").  (See generally Plea Hr'g Tr. 5.)  Pursuant to the Agreement, among other things, Petitioner agreed to plead guilty to Count One of the Subject Superseding Indictment charging him with racketeering in violation of 18 U.S.C. § 1962(c), and, in conjunction therewith, to admit committing three specific racketeering acts, to wit: (1) the October 2011 kidnapping of rival gang member Glasco (Racketeering Act 6A); (2) the July 2012 murder of Richard (Racketeering Act 8B); and (3) the September 2016 attempted murder of Gregg (Racketeering Act 13B).  (See Standard Plea Form, Ex. 1, ECF No. 170-1, attached to Opp'n; see also Subject Superseding Indictment; Plea Hr'g Tr. 15-20; PSR ¶¶ 1-2).  Additionally, per the terms of the Agreement, Petitioner stipulated to the Government's Guidelines estimated range of imprisonment of 360-months-to-life based upon a total adjusted offense level of 40; and, the parties stipulated to jointly recommend a sentence of 360 months'

---

[3]  In June 2023, the charges brought against Petitioner in the Earlier Case were dismissed.  (See Earlier Case, June 28, 2023 Dismissal Order, ECF No. 136.)

imprisonment. (See, e.g., Standard Plea Form ¶ 25.) The Agreement made clear that the parties' agreed-to imprisonment term was not binding on the Court. In entering the Agreement, Petitioner also waived his right to appeal his sentence if his term of imprisonment was 360 months or less; however, said waiver was inapplicable to claims of ineffective assistance of counsel.

Further, just prior to the commencement of his December 15, 2021 change-of-plea hearing, Petitioner completed a Standard Plea Form, which was signed by Petitioner and his counsel. (See Standard Plea Form, in toto.) Among other things, in it, Petitioner indicated he: (1) was not under the influence of any drugs or alcohol; (2) was of clear mind and understood what was occurring; (3) understood his constitutional rights he would be waiving by pleading guilty; (4) had discussed with his counsel, inter alia, (a) the Subject Superseding Indictment, (b) the maximum sentence for the Count to which he was pleading, (c) the Sentencing Guidelines, which were not mandatory, (d) the Section 3553(a) sentencing factors the Court would consider in fashioning a sentence, and (e) the binding effect of his plea. (See id.) Moreover, Petitioner indicated both his satisfaction with his counsel and his belief that counsel had done a good job. (See id. ¶¶ 44-45.) Continuing, Petitioner also acknowledged his guilty plea was voluntarily made of his own free will, i.e., no one had forced or threatened him to plead guilty; nor, other than the

7

Agreement, had anyone made any promises that caused Petitioner to plead guilty or regarding the sentence he would receive.  (See id. ¶¶ 47-50.)

At the outset of the plea hearing, Petitioner was placed under oath.  (See Plea Hr'g Tr. 2-3.)  Once sworn, the Court determined, inter alia, Petitioner: was competent and clear-headed; had not consumed any drugs, alcohol or medications before the hearing; understood (1) he had an absolute right to go to trial, (2) at trial, it would be the Government's burden to prove Petitioner's guilt beyond a reasonable doubt, and (3) if he pled guilty, Petitioner would be waiving his constitutional right to trial, as well as other rights. (Plea Hr'g Tr. 3-5.)  Petitioner also confirmed his familiarity with the Agreement, and certain facts to which Petitioner was agreeing pursuant to the Agreement, e.g., he was a member of the Gorilla Lanes, a subset of the Bloods; the Bloods was an enterprise and its activities affected interstate commerce and foreign commerce; and, the Bloods engaged in racketeering activities in which Petitioner participated.  (See id. at 6-8.)  Likewise, it was verified that Petitioner stipulated to the Guidelines calculation and the parties agreed to a recommended sentence of imprisonment of no more than 30 years. (See id. at 8-9.)  The Court advised Petitioner that if the Guidelines calculation was not what he and the Government agreed to, such miscalculation was not a basis for Petitioner to withdraw

his guilty plea; Petitioner was also told that the sentencing recommendation was not binding upon the Court, to which Petitioner acknowledged his understanding.  (See id. at 8-9, 10.)  Further, the Court informed Petitioner that, if sentenced to 360 months or less, he could not appeal his sentence, but he retained the right to do so based upon claims of ineffective-assistance-of-counsel. (See id. at 10-11.)  Yet again, the Court re-confirmed Petitioner's satisfaction with his defense counsel's representation.  (See id.; see also id. at 4.)  Further, the following colloquy occurred:

> THE COURT:  Do you have any other promises, agreements or conditions, other than that which is contained in the plea agreement?  In other words, is someone telling you you're going to get this type of sentence or that type of sentence?
>
> THE DEFENDANT: No.
>
> THE COURT:  All right.  And you reviewed this [Agreement] today and signed it after speaking to you attorney, right?
>
> THE DEFENDANT: Yes, your Honor.

(Id. at 13-14.)  Thereafter, the Court heard Petitioner's factual allocution (see id. at 15-20);[4] said allocution was followed by

---

[4]  As noted by the Government, it and Petitioner's defense counsel:

> also placed on the record that they were all in agreement that at the time of sentence, they would ask this Court to fashion a sentence that would ensure [Petitioner's] sentence in the

Petitioner's formal guilty plea, which the Court found to be knowing and voluntary.  (See id. at 23.)

C.    Sentencing

On August 5, 2022, the Court sentenced Petitioner to the recommended 360 months (i.e., 30 years) of incarceration.  (See Sent'g Hr'g Tr.; see also Aug. 5, 2022 Minute Entry, ECF No. 146.) As occurred at his plea hearing, at the commencement of his sentencing, Petitioner was placed under oath and asked by the Court whether he was satisfied with the services of his defense counsel, to which Petitioner responded he was satisfied.  (See Sent'g Hr'g Tr. 2-3.)   Defense counsel also advocated for the Court recommending that Petitioner's 360-month sentence run concurrently with any sentence imposed by the state in Petitioner's King County criminal case, as well as that Petitioner be placed in a medical facility.  (See id. at 6-9; 10-11.)   The Government agreed with defense counsel's request for a recommended concurrent federal sentence to any imposed state sentence.  (See id. at 9-10.)

In addressing the Court before sentencing was imposed, Petitioner apologized for his poor choices, which he recognized caused the same grief to the families of the victims as he and his friends were suffering from the loss of McClenic.  (See id. at

---

instant matter would run concurrently with any sentence imposed with [Petitioner's] then pending Kings County, New York criminal case.

(Opp'n at 9 .3 (citing Plea Hr'g Tr. 20-21).)

10

11.)  Petitioner further asserted he regretted "to his soul" the killing of an innocent person.  (See id. at 11-12.)  Despite the Probation Department's recommendation of a life sentence (see ECF No. 128-1 (sealed)), ultimately, the Court sentenced Petition principally to a below-Guidelines term of 360 months' imprisonment and adopted both requested recommendations regarding the concurrency of Petitioner's federal sentence to any state-imposed sentence and the placement of Petitioner in a medical facility and, thereafter, a facility in North Caroina.  (See id. at 16-18.)  Of significance, the Court observed:  "I think the efforts of your attorney and the [G]overnment have been remarkable in coming to a sentence that is no more than necessary, that's fair, considers not only the crimes that you have committed, your prior history, but also your health."  (Id. at 16:13-17.)

## DISCUSSION

I.   Applicable Law

   A.   The Section 2255 Standard Generally

      "The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law."  Harrington v. Richter, 562 U.S. 86, 91 (2011).  To obtain relief under Section 2255, a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

11

law, or is otherwise subject to collateral attack."   28 U.S.C. § 2255(a); see also United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018).   Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"   United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)); accord Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), aff'd, 679 F. App'x 41 (2d Cir. Feb. 15, 2017).

When determining whether to grant relief, Second Circuit precedent "instructs that § 2255 review is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'"   Hoskins, 905 F.3d at 102 (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks omitted)); see also Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010) ("Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." (internal quotation marks omitted)).   Additionally, in advancing

12

a federal habeas corpus writ, the petitioner has the burden of proving his claims by a preponderance of the evidence.  See Negron v. United States, 520 F. Supp. 3d 296, 301 (E.D.N.Y. 2021) ("A § 2255 movant bears the burden to prove the claims in his § 2255 motion by a preponderance of the evidence." (citing Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (further citation omitted)); accord Skaftouros v. United States, 667 F.3d 144, 158 (2d Cir. 2011).

B.    Ineffective-Assistance-of-Counsel Claims

> Claims of ineffective assistance of counsel are evaluated under the framework set forth in Strickland v. Washington, 466 U.S. 668 (1984).  "First, the [petitioner] must show that counsel's performance was deficient."  Strickland, 466 U.S. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." Id.

Herring v. United States, No. 20-CV-9752, 2025 WL 3124678, at *4 (S.D.N.Y. Nov. 6, 2025); see also Cabral v. United States, No. 12-CR-0336, 2022 WL 307809, at *6 (E.D.N.Y. Feb. 2, 2022) (stating, "to prevail on his ineffective assistance of counsel claim, [petitioner] must '(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,'' and (2) ''affirmatively prove prejudice' arising from counsel's allegedly deficient representation'" (quoting United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005); further citation omitted)).  As to the first,

13

"performance" prong, a petitioner must: (a) "show that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms", with the court's review being highly deferential and indulging in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and (b) "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." United States v. Peterson, 896 F. Supp. 2d 305, 312 (S.D.N.Y. 2012) (quoting Strickland; internal quotation marks omitted). As to the second, "prejudice" prong, a petitioner "must demonstrate that, 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. (quoting Stickland). In that vein, a petitioner is required to show "[t]he likelihood of a different result [was] substantial, not just conceivable." Harrington, 562 U.S. at 111-12 (internal quotation marks omitted). And, "[i]n assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'" Berghuis v. Thompkins, 560 U.S. 370, 389 (2010) (quoting Strickland, 466 U.S. at 695).

Continuing,

> [i]n the specific context of guilty pleas, Strickland's prejudice component "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. One way to satisfy the "prejudice" requirement is to "show that there is a reasonable

> probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.; see also Kovacs v. United States, 744 F.3d 44, 51–52 (2d Cir. 2014) (discussing various ways that prejudice may be shown in the guilty plea context, including a forgone decision to proceed to trial or a more advantageous plea offer). In addition, a petitioner may show prejudice by demonstrating that he would have received and accepted a guilty plea with a lower sentence but for counsel's errors. See Missouri v. Frye, 566 U.S. 134, 147 (2012); see also Lafler v. Cooper, 566 U.S. 156, 174 (2012) (finding prejudice where the defendant showed that, but for counsel's deficient performance, there was a reasonable probability that the court would have accepted a guilty plea with a sentence less than a third of the length of the sentence he received after trial). Thus, with respect to plea bargaining, a defendant must show that "the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163.

United States v. Derounian, No. 16-CR-0412, 2024 WL 3623522, at *14 (E.D.N.Y. Aug. 1, 2024). The Derounian Court also noted, as to a petitioner's purported insistence on proceeding to trial, a "petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Id. at *14 n.17 (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). And, of significance, the Second Circuit "requires some objective evidence other than [petitioner's] assertions to

15

establish prejudice."   Id. (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003); further citation omitted).

"Because both parts of the Strickland test must be satisfied for a petitioner to establish ineffective assistance of counsel, failure to satisfy one part of the test frees a district court from assessing whether the petitioner satisfied the other part of the test."   Velez v. United States, No. 05-CV-0537, 2006 WL 1952191, at *4 (S.D.N.Y. July 10, 2006) (citing Strickland, 466 U.S. at 699 (instructing a court need not "address both components of the [two-part Strickland] inquiry if the defendant makes an insufficient showing on one")); see also Derounian, 2024 WL 3623522, at *12 ("A court must reject a petitioner's ineffective assistance of counsel claim if it fails to meet either prong." (citing Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013)).

C.    Consideration of Petitioner's *Pro Se* Status

"When a defendant attacking his . . . sentence is proceeding pro se, the court must 'read [the defendant's] submissions broadly so as to determine whether they raise any colorable legal claims.'"   United States v. Williams, No. 20-CR-0404, 2025 WL 660213, at *4 (E.D.N.Y. Feb. 28, 2025) (quoting United States v. Parisi, 529 F.3d 134, 139 (2d Cir. 2008); further citation omitted).   Hence, since Petitioner's submissions were filed pro se, the Court has liberally construed them "'to raise

16

the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)). Furthermore, "if it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the [district court] must dismiss the [habeas] motion." Seabrook v. United States, No. 22-841, 2023 WL 7489961, at *2 (2d Cir. Nov. 13, 2023) (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009)).

## II. Application

### A. The Petition

#### 1. Petitioner's Position

In seeking to have his sentence vacated, Petitioner raises three claims of ineffective assistance of counsel: (a) asserting "Counsel was ineffective for giving inaccurate advice concerning the guideline range" (see Petition at 5-8) (hereafter, "Claim One" or the "Range Claim"); (b) contending counsel made recommendations and promises that were not followed or kept, e.g., that (i) Petitioner's federal sentence would run concurrently with his state sentence, (ii) Petitioner would be housed in a medical

17

facility, and (iii) Petitioner could earn First Step Act ("FSA") good-time credits to reduce his sentence (see id. at 10-11) (hereafter, "Claim Two" or the "Recommendations & Promises Claim"); and, (c) stating "Counsel was ineffective when failing to articulate the desireability [sic] of the Government's Pre-Superseding indictment plea offer" (id. at 12) (hereafter, "Claim Three" or the "Offers Claim").  As to Claims One and Two, Petitioner expands upon those Claims, arguing why he believes each is a basis for granting habeas relief.  (See id. at 5-6 (re: Claim One), and at 10-11 (re: Claim Two).)  However, as to Claim Three, Petitioner's provides a cursory explanation of that claim.  (See id. at 12.)  Further, although he includes a letter from his attorney as a supporting exhibit to Claim One, his Range Claim, Petitioner has not otherwise supported his Petition with a memorandum of law, an affidavit, or other evidence.  Nor, as noted, did Petitioner reply to the Government's Opposition or his attorney's affidavit although he was explicitly afforded the opportunity to do so.  (See supra note 1; see also Jan. 13, 2026 Elec. ORDER ¶ 2.)

    2.   The Government's Position

    The Government maintains each of Petitioner's ineffective-assistance Claims "is without merit."  (Opp'n at 1.) As to Claim One, it argues defense counsel's advice to Petitioner regarding Petitioner's Guidelines range was accurate and

18

"[p]roviding accurate advice certainly cannot constitute deficient performance." (Id. at 15.) As to Claim Two, the Government would have the Court reject it since "[a]ll the [Petitioner] offers the Court as proof is his own self-serving statements in the Instant Petition", which statements contradict his sworn statements made at his plea hearing and contravene his opportunity to address the Court at his sentencing. (See id. at 16.) Moreover, Petitioner is unable to show the requisite prejudice needed to succeed on this Claim. (See id. at 16-17.) Finally, as to Claim Three, the Government characterizes it as "utterly baseless and nonsensical" since "[t]he Proposed Plea Agreement did not provide [Petitioner] with coverage or protection for any other crimes which it was investigating at the time, including the murder of Anthony Richard." (Id. at 18.) And, in any event, defense "counsel negotiated a highly favorable plea agreement for [Petitioner]", such that Petitioner cannot establish prejudice. (Id. at 19.)

In support of its Opposition, the Government submits an affidavit from Petitioner's defense counsel, Murray Singer. (See Singer Aff., ECF No. 193.) Under penalty of perjury, Attorney Singer averred, inter alia:

a. As to Claim One: He believes the advice he provided Petitioner was accurate since, "[w]hile U.S.S.G. §2A1.5(a) sets a base offense level of 33 for conspiracy to commit murder, [§]2A1.5(c) states that if the offense resulted in death,

19

[G]uideline [§]2A1.1, setting a base offense level of 43, applies" (id. ¶3);

b.   As to Claim Two:  First, he has no "specific recollection or record" regarding promising Petitioner that he would be sent to a medical facility or be designated to a facility near his family in North Carolina; nonetheless, the record establishes Singer requested a recommendation of both of those placements on behalf of Petitioner (id. ¶4).   Second, and similarly, Singer has no "specific recollection or record of any discussion with [Petitioner] about any effect the First Step Act might have on the amount of time he would have to serve", but, in advising criminal clients, Singer relies upon a "chart prepared by the Sentencing Resource Counsel for the Federal Public and Community Defenders" (hereafter, the "Chart"), which Chart indicates the racketeering acts underlying Petitioner's conviction would render Petitioner ineligible for FSA good-time earned credits (see id. ¶5); and

c.   As to Claim Three:  He received two proposed plea agreements from the Government; one in June 2018 and another one in December 2018 (see id. ¶7).  Singer shared both proffered agreement with Petitioner (see id.); both agreements required Petitioner to stipulate to a Guidelines range and contained an appeal waiver (see id.); Singer did not consider either "particularly favorable" to Petitioner and does not recall

Petitioner indicating a willingness to consider either proffered agreement (see id.).  Given those factors, Singer did not encourage Petitioner to accept the Government's prior offers (see id.).

At bottom, asserting Petitioner fails to establish defense counsel's assistance was deficient or that Petitioner was prejudiced by his counsel's performance, the Government takes the position the Petition should be denied in its entirety.  (Opp'n id.)  For the reasons elucidated herein, the Court agrees.

B.    The Court's Ruling

As a threshold matter, the Court has determined a hearing on the Petition is not required in this instance; on the record presented, Petitioner has not made out a prima facie case that he is entitled to habeas relief.  See generally Puglisi, 586 F.3d 209; see also 28 U.S.C. § 2255(b).  To begin, Petitioner has not supported his Claims with an affidavit.  See, e.g., Puglisi, 586 F.3d at 215-17; see also Perevoznikov v. United States, No. 20-CR-0415, 2025 WL 916883, at *4 (E.D.N.Y. Mar. 25, 2025) ("To warrant a hearing, 'the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief.'" (quoting Gonzalez, 722 F.3d at 131)). Instead, as to Claim One, Petitioner baldly asserts "had it not been for counsel's persistent inaccurate advice [regarding the applicable Guidelines range, he] would not have accepted the terms

21

of the plea agreement and would have persued [sic] a jury trial . . . ." (Petition at 6.)  To the extent Petitioner proffers a cover letter from his counsel without the referenced enclosed proposed plea agreement, its content is too ambiguous to support Petitioner's bald allegations that counsel's Guidelines-related advice was ineffective; out of context, it fails to provide detailed and controverted issues of fact warranting a hearing. See, e.g., Puglisi, 586 F.3d at 213; Perevoznikov, 2025 WL 916883, at *4.  As to Claim Two, Petitioner is more equivocal, stating in his Petition that "had it not been for counsel's inaccurate advice, [he] would have been reluctant to sign said plea agreement." (Petition at 11 (emphasis added).)  And, as to Claim Three, Petitioner does not state how counsel's alleged failure in discussing the desirability of earlier plea offers prejudicially impacted his decision to enter into the subject Agreement.  (See id. at 12.)

"Moreover, a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding."  Puglisi, 586 F.3d at 214 (collecting cases).  Here, as the Court which presided over Petitioner's change-of-plea hearing and sentencing, this Court is well-versed with the underlying proceedings; what transpired in said proceedings controvert the assertions Petitioner now makes.  See,

22

e.g., id. at 215.  In such an instance, where it is apparent a petitioner has not presented a colorable basis for relief and the record conclusively shows the petitioner is not entitled to habeas relief, a court may dismiss the habeas petition without an evidentiary hearing.  Cf. id. at 213-14 ("[W]hen the judge that tried the underlying proceedings also presides over the Section 2255 motion, a less-than full-fledged evidentiary hearing may permissibly dispose of claims where the credibility assessment would inevitably be adverse to the petitioner."); see also Seabrook, 2023 WL 7489961, at *2 (affirming dismissal of habeas petition without hearing where petition was without merit). Accordingly, given its review of the Petition and the record, with which it is well familiar, this Court declines to hold a full-blown evidentiary hearing and proceeds to rule upon the Petition.

For each of the three grounds Petitioner puts forth in support of his Section 2255 habeas Petition, he is unable to satisfy the requisite prejudice prong.  That is because, given the specific facts of this case, Petitioner is unable to convince the Court that a decision to have rejected the Agreement would have been rational under the circumstances.  See Derouian, 2024 WL 3623522, at *14 and n.17.  Indeed, under the facts of this case, Petitioner's claims that he would have rejected the Agreement, or would have been reluctant to enter into it, but for advice of counsel defy credulity.  Rather, as the Government aptly explains:

23

> Had [Petitioner] rejected the [P]lea [A]greement and gone to trial, which he now contends he wants, [Petitioner] would have been facing a mandatory minimum term of life plus 10 years. Furthermore, as set forth in the [Standard] Plea Form at ¶ 52, the evidence against [Petitioner] was overwhelming. Finally, [Petitioner]'s statements at sentencing not only confirmed his guilt, but also demonstrate[d] his motive for committing the murder charged against him.

(Opp'n at 17.[5]) Indeed, in light of the extensive evidence the Government had against Petitioner--e.g., witness testimony from civilian, law enforcement, expert, and cooperating witnesses; social media evidence, including postings and messages from Petitioner, himself; crime scene photographs; cell site and cell phone records; recorded jail calls and 911 calls; firearm(s) recovered from conspirators; victims' medical records; autopsy reports; death certificates; jail records; and, Shotspotter recordings (see Standard Plea From ¶ 52)--Petitioner's contention he would have fared better if he proceeded to trial is patently unavailing. Such a claim on the instant record is simply irrational; it certainly does not warrant habeas relief under any of the three Claims Petitioner asserts.

> Likewise, other than his bald assertions [and a vague cover letter from his defense attorney], Petitioner has failed to proffer any objective evidence demonstrating prejudice. See Norville [v. United States], 151 F. Supp. 3d [329,] 336 [(S.D.N.Y. 2015)]

---

[5]  The Government advances this argument as to Claim Two, but it equally applies to the other two Claims advanced by Petitioner.

24

> (addressing prejudice prong of the Strickland test; instructing a petitioner must affirmatively prove prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and "some objective evidence other than [petitioner's] assertions is required to establish prejudice" (quoting Pham v. United States, 317 F.3d 178, 182 (2d Cir.2003)) (citation modified). In the absence of establishing prejudice, Petitioner's claim of ineffective-assistance-of-counsel [] fail[s].

Hardy v. United States, No. 17-CR-0372, 2026 WL 252003, at *9 (E.D.N.Y. Jan. 30, 2026). Even if that were not true, as explained below, because Petitioner is unable to establish the performance prong of the Strickland test as to each Claim he advances for habeas relief, his Petition would be denied nonetheless.

### 1.  As to Claim One:  The Range Claim

Petitioner's Range Claim is based upon his misapprehension of the Guidelines calculation for conspiracy to commit murder versus murder. (See Petition at 6.) While, in the abstract, it is true that the base level for conspiracy to commit murder is 33 and that the base level for murder is 43, which is "[a] significant difference in [G]uideline range calculation" (id.), Petitioner has ignored that, in this instance, since the conspiracy to murder Richard resulted in Richard's death, "Guideline 2A1.1 is applied, which provides a base offense level of 43." (PSR ¶ 70.) Stated differently:

> In this context, where there is a conspiracy to kill an individual and the conspiracy resulted in the death of the victim, the Guideline for conspiracy to murder (§ 2A1.5) contains a cross reference to the Guideline for first degree murder (§ 2A1.1). The first-degree murder Guideline provides for a base offense level of 43.

(Opp'n at 15 (citing U.S.S.G. § 2A1.5(c)(1)).) And, this is precisely the advice Attorney Singer provided Petitioner. (See Singer Aff. ¶ 3.) Hence, as the Government aptly asserts, "counsel's advice was accurate" and "[p]roviding accurate advice . . . cannot constitute deficient performance." (Id.)

The Court also observes, at his change-of-plea hearing, and while he was under oath, Petitioner confirmed he had reviewed the Guidelines with counsel. (See, e.g., Plea Hr'g Tr. 8-11.) Relatedly, upon inquiry at the change-of-plea and sentencing hearings, Petitioner also averred to his satisfaction with his counsel's representation. (See Plea Hr'g Tr. 4; Sent'g Hr'g Tr. 3.) This Court has consistently rejected hindsight attempts of claiming ineffective-assistance-of-counsel especially when such claims are based upon bald allegations not supported by competent evidence and where such subsequent claims contradict a petitioner's earlier sworn declaration of satisfaction with defense counsel's representation. See, e.g., Hardy, 2026 WL 252003, at *9; Leonardi v. United States, No. 21-CR-0452, 2026 WL 457085, *10 (E.D.N.Y. Feb. 18, 2026) (reiterating petitioner's

26

statements regarding satisfaction with counsel's representation "made under oath, are afforded a strong presumption of truthfulness"; rejecting petitioner's ineffective-assistance-of-counsel claim where petitioner stated, at his sentencing hearing, he was satisfied with his defense counsel); see also United States v. Logan, 845 F. Supp. 2d 499, 511-12 (E.D.N.Y. 2012) (rejecting ineffective assistance claim where petitioner claimed he was pressured to plead guilty by counsel, but such claim was contradicted by petitioner's sworn statement, including at sentencing, where petitioner stated he was satisfied with counsel's legal representation) (collecting cases); cf. Oklu v. United States, No. 12-CR-0177, 2016 WL 1383530, at *3 (S.D.N.Y. Apr. 7, 2016) ("It is well-established that 'allegations a defendant makes in a Section 2255 petition cannot overcome his contrary statements under oath during a plea allocution, which must be given presumptive force of truth.'" (quoting Norville, 151 F. Supp. 3d at 336; further citation omitted) (citation modified). Such is the case here. Nothing has been presented to satisfy the Court that Attorney's Singer's legal assistance was anything less than reasonable. Accordingly, as to Claim One, Petitioner's request for habeas relief is DENIED.

[Remainder of page intentionally left blank.]

27

2.  As to Claim Two:
    The Recommendations & Promises Claim

Petitioner's Claim Two is based upon three alleged promises purportedly made by his defense counsel, which supposedly persuaded Petitioner to plead guilty, to wit: (a) the alleged promise that Petitioner's federal and state sentences would run concurrently (see Petition at 10); (b) the alleged promise that Petitioner would be sent to a medical facility and, thereafter, a facility in North Carolina to be close to family (see id.); and (c) the alleged promise Petitioner could reduce his sentence by participating in FSA classes and programs (see id. at 10-11). Other than his bald contentions, Petitioner does not support Claim Two with competent evidence; hence, he has failed to establish this Claim by a preponderance of the evidence, which is his burden to meet.  As the Government persuasively argues: "[W]hen a petitioner makes such conclusory allegations, unsupported by specific facts, or contentions which are not credible in light of the record available to the court, the allegations are subject to summary dismissal."  (Opp'n at 16 (citing Blackledge, 431 U.S. at 74; further citation omitted).)  Such is the case as to Claim Two.

a.  The Concurrent Sentences "Promise"

As a general matter, at his plea hearing, the Court specifically inquired of Petitioner whether, other than the Agreement, any promises had been made to him about the type of

28

sentence he would receive. (See Plea Hr'g Tr. 13-14.) He responded in the negative. (See id.; see also Standard Plea Form at ¶48 (stating no one threatened or forced Petitioner to plead guilty), at ¶49 (stating, other than plea Agreement with the Government, no one had made any promises that caused Petitioner to plead guilty), and ¶50 (stating no one had made any promise to Petitioner as to what his sentence would be).) Petitioner's "in-court statements are afforded a 'strong presumption of verity,'" Delutro v. United States, No. 11-CV-2755, 2014 WL 4639198, at *8 (E.D.N.Y. Sept. 16, 2014) (quoting Gonzalez, 722 F.3d at 130–31), "and create a 'formidable barrier' to habeas relief." Id. (quoting Blackledge, 431 U.S. at 74). Here, Petitioner is unable to breach that formidable barrier since he has not presented any competent evidence that would defeat the veracity of his prior in-court statements. And, in any event, the record establishes both that Attorney Singer requested the Court recommend Petitioner's federal sentence run concurrently with any state-imposed sentence and that the Court granted that request. (See Sent'g Hr'g Tr. 10, 17; see also Judgment, ECF No. 146, Section V ("For reasons stated on the record, it is recommended that the defendant's sentencing in this case shall run concurrent to any State Court conviction/sentencing.")); 18 U.S.C. § 3584(a). Hence, constitutionally deficient assistance of counsel has not been shown as to this prong of Claim Two.

b.   The Placement "Promises"

As for any purported promise regarding Petitioner's placement in certain facilities, all that can be done by a defense counsel is advocate for a recommended placement since, "[t]he BOP is the sole agency charged with discretion to place a convicted defendant within a particular treatment program or a particular facility." Levine v. Apker, 455 F.3d 71, 83 (2d Cir. 2006) (citing United States v. Williams, 65 F.3d 301, 307 (2d Cir.1995) (confinement to a particular facility or drug treatment program is "within the sole discretion of the Bureau of Prisons")).  Indeed, courts have no such authority and may only make recommendations as to placements.  See 18 U.S.C. § 3621(b).  In that vein, the record clearly demonstrates Attorney Singer zealously advocated for two recommended placements for Petitioner: first, in a medical facility; and, thereafter, in a facility in North Carolina.  (See Sent'g Hr'g Tr. 10-11 (re: medical facility); see id. at 13 (re: North Carolina facility).)  Attorney Singer pressed for the two recommended placements Petitioner claims he (Petitioner) was promised.  (See Singer Aff. ¶ 4.)  Under the law, requesting a recommended placement is the most a defense attorney is able to do on that issue.[6]  See, e.g., Levine, 455 F.3d at 83; see also 18

---

[6]  Indeed, since, as a well-seasoned defense attorney, Attorney Singer is aware he cannot make such a promise, it is not surprising he has no specific recollection of making such a purported promise. (See Singer Aff. ¶ 4.)

U.S.C. 3621(b).  Moreover, the record establishes the Court adopted Attorney Singer's two requested placement recommendations.  (See Sent'g Hr'g Tr. 17, 18; see also Judgment, Section V ("The Court hereby recommends to the BOP that during the service of his sentence, the defendant be housed in either FCI Butner, FMC Devens, or some other Federal Medical Facility for treatment.  Upon completion of this treatment, it was further recommended that he then be housed in a facility in or near North Carolina.").)  Hence, upon the record presented, Petitioner has failed to establish by a preponderance of the evidence that Attorney Singer's assistance on this issue was constitutionally ineffective.

c.   The FSA Credits "Promise"

Like his other "Promise"-related claims, Petitioner's FSA-credits-related claim is unavailing.  To begin, without any competent evidence challenging his prior averments to the Court that he was not promised anything (other than what was contained in the plea Agreement) in entering his guilty plea, the veracity of Petitioner's statements as to promises remains undisputed.  See, e.g., Hardy, 2026 WL 252003, at *9; Delutro, 2014 WL 4639198, at *8; Oklu, 2016 WL 1383530, at *3.  Further, in his Affidavit, declaring he had no specific recollection as to Petitioner's case, Attorney Singer explained his normal practice in advising clients about their eligibility to earn FSA credits; Attorney Singer relies upon the Public Defenders' Chart, which identifies crimes of

31

conviction rendering defendants ineligible for such credits. (See Singer Aff. ¶ 5.) Relevant to Petitioner's case, the Chart includes as a crime-of-ineligibility the conviction for a serious violent felony as defined in 18 U.S.C. §3559(c)(2)(F), which would encompass the racketeering acts underlying Petitioner's conviction. (See id.) In other words, having relied upon the Chart, Attorney Singer would not have advised Petitioner he was eligible for First Step Act credits. In the absence of any evidence that Attorney Singer deviated from his normal practice, Petitioner has failed to show such practice fell outside the broad range of prevailing professional norms, thereby impeding Petitioner's right to effective assistance of counsel. Therefore, Petitioner's FSA-credits-related branch of his "Promises" Claim is not a basis to grant habeas relief.

In sum, upon the record presented, Petitioner's Claim Two wholly fails to merit habeas relief. Hence, on this basis, the Petition is DENIED.

3. <u>As to Claim Three: The Offers Claim</u>

Petitioner does not meaningfully develop his Offers Claim. The extent of Petitioner's "supporting facts" is:

> Before the govt's superseding indictment, counsel communicated the govt's 0-10 yr & 0-20 yr plea offer, but did not discuss the specific desireability [sic] of the offer versus the overwhelming weight of evidence suggesting guilt.

32

(Petition at 12.[7])  It appears Petitioner may be referring to plea agreements offered in Petitioner's Earlier Case.  Indeed, that comports with the recollection of Attorney Singer.  (See Singer Aff. ¶ 7.)

As to the first proffered plea agreement:  Attorney Singer avers it was received from the Government in June 2018, and he shared it with Petitioner.  (See id.)  More specifically:  "The agreement estimated an applicable guideline range of 262-327 months, required that Mr. Michel stipulate to that guideline range, and included an appellate waiver for any sentence of 365 months or below."  (Id.)  Because Attorney Singer did not consider this offer to be particularly favorable to Petitioner--and, for which he has not recollection of Petitioner indicating he would consider it-- Attorney Singer did not encourage Petitioner to accept that offer. (See id.)

As to the second proffered plea agreement:  Attorney Singer avers it was received from the Government in December 2018, and he shared it with Petitioner.  (See id.)  More specifically: "The second agreement estimated an applicable guideline range of 412-485 months, required that Mr. Michel stipulate to that guideline range, and included an appellate waiver for any sentence

---

[7]  Capitalization in quoted material has been removed.  The Court also notes the handwriting in "GROUND THREE" of the Petition is markedly different from the handwriting in rest of the Petition. (Cf. Petition at 12, with Petition, in toto.)

33

of 382 months or below." (Id.) Once more, finding the second offer was not "particularly favorable" to Petitioner--which, again, Attorney Singer does not recall Petitioner indicating he would consider it--Attorney Singer did not encourage Petitioner to accept it. (See id.)

The Government argues Claim Three is baseless. (See Opp'n at 18.) The Court agrees. As the Government explains, Claim Three seems to suggest that, had Attorney Singer somehow convinced Petitioner to accept a plea offer in the Earlier Case, Petitioner would not have then been charged in the Subject Superseding Indictment.[8] (See id.) However, as the Government asserts: "The Proposed Plea Agreement did not provide [Petitioner] with coverage or protection for any other crimes which it was investigating at the time, including the murder of Anthony Richard." (Id.) Further, pursuant to the terms of the proposed plea agreement, Petitioner would be required to plead to a charge with a 10-year mandatory minimum term of imprisonment and an estimated applicable guidelines range of 412-to-485 months' imprisonment. (See id. (citing Earlier Case proposed plea agreement, ECF No. 170-2, attached to Opp'n).) Conversely, by way of the extensively negotiated subject Agreement in the Instant Case, Petitioner was

---

[8] Recall, the indictment in the Earlier Case charged Petitioner with, inter alia, the attempted murder of fellow, but suspected "disloyal", gang member Gregg. (See Earlier Case, Indictment, ECF No. 1.)

34

able to plead guilty to an offense with no minimum term of imprisonment and the Government agreed to jointly recommend a sentence of 360 months' imprisonment. (See id.) And, although Petitioner was required to admit his role in three predicate crimes (including the 2016 attempted murder of Gregg), the Agreement also provided Petitioner "with coverage for all other crimes charged in the [subject Superseding I]ndictment." (Id. at 19.) Additionally, the Agreement "prevented the [G]overnment from seeking a sentence of up to 485 months' imprisonment," which it could have sought in the Earlier Case and without providing any coverage or protection for the murder of Richard, the homicide Petitioner was ultimately charged with and to which he pled guilty. (Id. at 19.) At bottom, given the dismissal of the Earlier Case as to Petitioner and the outcome of the Instant Case, the bald assertion Attorney Singer was ineffective for failing to articulate the desirability of the Government's earlier proposed plea agreements is without merit. Accordingly, finding Claim Three unavailing, the Petition is DENIED on this basis.

Furthermore, as previously stated: Petitioner's "in-court statements are afforded a 'strong presumption of verity,'" Delutro, 2014 WL 4639198, at *8 (quoting Gonzalez, 722 F.3d at 130–31), "and create a 'formidable barrier' to habeas relief." Id. (quoting Blackledge, 431 U.S. at 74). Hence, weighing Petitioner's sworn attestations that he was satisfied

35

with his defense counsel's services against his current bald assertions to the contrary, the Court finds Petitioner's claims presented in Ground Three meritless. See, e.g., Gist v. United States, No. 16-CR-0656, 2021 WL 3774289, at *25 (S.D.N.Y. Aug. 24, 2021) ("The Supreme Court has long held that '[s]olemn declarations in open court carry a strong presumption of verity.  T[hus, t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal . . . .'" (quoting Blackledge, 431 U.S. at 74 (citing Machibroda v. United States, 368 U.S. 487, 495-96 (1962)))).  Hence, habeas relief is DENIED for this reason, as well.

–*–*–*–

To the extent not explicitly stated herein, the Court has considered Petitioner's remaining arguments and finds them to be without merit.  At bottom, given the record of this case, and having considered the relevant case law, the Court finds Petitioner is unable to satisfy the applicable Stickland test.  Therefore, habeas relief is not warranted.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Petitioner's Petition seeking to vacate, set aside,

36

or correct his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 167) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED**, because there can be no debate among reasonable jurists that Petitioner is not entitled to relief, the Court does not issue a Certificate of Appealability. See 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); Baker v. United States, No. 97-CR-0877, 2022 WL 2803556, at *2 (E.D.N.Y. July 18, 2022) ("On the whole, Petitioner has not made a substantial showing of the denial of his constitutional rights, and the [court's decision] thus does not warrant a Certificate of Appealability."); and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Petitioner at his address of record, including the notation "LEGAL MAIL" on the mailing envelope, and mark as "CLOSED" the corresponding civil case, Case No. 23-CV-6702.

> **SO ORDERED.**
> /s/ JOANNA SEYBERT
> Joanna Seybert, U.S.D.J.

Dated:    May 19, 2026
          Central Islip, New York